This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**TANYA ESPINOSA, TINA ESPINOSA, and, RONNIE ESPINOSA, JR.,**

      Plaintiffs/Appellants/Cross-Appellees

v.                                    **NO. 30,576**

**SETTLEMENT FUNDING, L.L.C., d/b/a PEACHTREE SETTLEMENT FUNDING,**

      Intervenors/Defendants/Appellees/Cross-Appellants.

Consolidated With

**IN THE MATTER OF THE ESTATE OF RONNIE GILBERT ESPINOSA, SR., Deceased.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY Valerie Huling, District Judge**

Gallagher, Casados & Mann, P.C.
R. Thomas Dawe
Albuquerque, NM

for Appellees/Cross-Appellants

Gilman Law Firm
James K. Gilman
Albuquerque, NM

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellants/Cross-Appellees

**MEMORANDUM OPINION**

**FRY, Judge.**

In this appeal, we are asked to review the district court's award of attorney fees, pre- and post-judgment interest, and costs and expenses to Plaintiffs, who are the three children of Ronnie Espinosa, Sr., and were the prevailing parties in the final judgment entered by the district court. We affirm the district court's award with respect to attorney fees and pre- and post-judgment interest. However, we reverse the award of costs and expenses and remand with instructions that the district court reevaluate this portion of the award consistent with this opinion.

**BACKGROUND**

This case concerns a particularly litigious dispute between Plaintiffs and Defendant Settlement Funding, L.L.C. (Settlement) that has spanned several years and has been the subject of two prior appeals to our Court. *See Espinosa v. United of Omaha Life Ins. Co.*, 2006-NMCA-075, 139 N.M. 691, 137 P.3d 631 *(Espinosa I)*; *Espinosa v. United of Omaha Life Ins. Co.*, No. 27,407, 2009 WL 6690307 ( N.M. Ct. App. Mar. 26, 2009) (mem.) (*Espinosa II*). In this third appeal, we address the propriety of the district court's rulings regarding attorney fees, costs, and interest. Because the parties are familiar with the underlying facts and proceedings and because

2

this is a memorandum opinion, we do not provide a detailed summary here and instead refer to our prior two decisions in this case for the factual background of the parties' dispute. We include additional information as necessary in connection with the issues raised in our discussion below.

**DISCUSSION**

Plaintiffs raise four issues on appeal concerning the district court's ruling on attorney fees, pre- and post-judgment interest, and costs and expenses. Settlement has filed a cross-appeal in which it has raised three issues regarding the district court's ruling. We have consolidated the issues in our discussion and address arguments raised in the main and cross-appeal together.

**1. Attorney Fees**

"New Mexico adheres to the . . . American rule that, absent statutory or other authority, litigants are responsible for their own attorney[] fees." *See N.M. Right to Choose NARAL v. Johnson*, 1999-NMSC-028, ¶ 9, 127 N.M. 654, 986 P.2d 450. "Authority [for attorney fees] can be provided by agreement of the parties to a contract. The scope of that authority is defined by the parties in the contract, and a determination of what fees are authorized is a matter of contract interpretation." *Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990)

3

(citation omitted); *see NARAL*, 1999-NMSC-028, ¶ 9 (indicating that the American rule does not bar enforcement of a contractual provision for attorney fees).

The district court awarded Plaintiffs attorney fees in the amount of $109,360 plus gross receipts tax on the basis of a contractual provision in the loan agreement entered into between WebBank—Settlement's predecessor in interest—and Plaintiffs' deceased father. This provision, which we refer to as the fees provision, provided:

> In the event of any dispute between the parties concerning this [a]greement or the transactions contemplated hereby, the prevailing party shall be entitled to recover its costs and expenses, including reasonable attorney[] fees, incurred in connection with such dispute.

We review the award of attorney fees for an abuse of discretion. *Id.* ¶ 6. However, we review the application of the law to the facts de novo. Id. ¶ 7. "Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Id.* (alteration, internal quotation marks, and citation omitted).

In the proceedings below, Settlement argued that the fees provision provided no basis for the recovery of attorney fees because there was no privity of contract between Plaintiffs and Settlement. Unpersuaded by this argument, the district court determined that attorney fees were recoverable based on the fees provision. However, the court concluded that the amount of fees requested by Plaintiffs was unreasonable.

4

Accordingly, the district court reduced the award of attorney fees from Plaintiff's initial request of $268,875.50 plus tax to $109,360 plus tax.

Plaintiffs contend that the district court erred in reducing the amount of attorney fees awarded. "Historically, New Mexico courts have . . . used the factors now found in Rule 16-105 [NMRA] of the Rules of Professional Conduct to examine the reasonableness of attorney fees." *In re N.M. Indirect Purchasers Microsoft Corp.*, 2007-NMCA-007, ¶ 76, 140 N.M. 879, 149 P.3d 976. These factors include:

> (1)    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2)    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3)    the fee customarily charged in the locality for similar legal services;
>
> (4)    the amount involved and the results obtained;
>
> (5)    the time limitations imposed by the client or by the circumstances;
>
> (6)    the nature and length of the professional relationship with the client;
>
> (7)    the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8)    whether the fee is fixed or contingent.

Rule 16–105(A). "The factors are not of equal weight, and all of the factors need not be considered." *Microsoft*, 2007-NMCA-007, ¶ 78.

In this case, Plaintiffs' counsel sought fees at a rate of $350 per hour for 768.25 hours, which resulted in a requested total of $268,875.50.[1] In support of his requested hourly rate, Plaintiffs' counsel submitted an affidavit from another attorney who stated that the $350 requested hourly rate was a "reasonable and customary fee" in the locality for similar legal services. This attorney also reviewed Plaintiffs' counsel's time records and concluded that only 670.55 hours of the total hours listed in counsel's time records were actually attributable to work performed in this case. Plaintiffs' counsel also submitted an affidavit from his accountant. In response to Plaintiffs' submissions to the district court, Settlement's counsel submitted an affidavit summarizing its attorney fees charges as well as an affidavit from another local attorney who stated that, in his experience, the $350 requested hourly rate was unreasonable and higher than the customary rates charged for similar work.

After reviewing the foregoing and the record, the district court reduced the number of hours Plaintiffs' counsel claimed to 546.80, determining that "there were numerous excessive charges for items." The district court then determined that $350 was an excessive hourly rate and that a "reasonable hourly rate for the services

---

[1]According to our calculations, $350 times 768.25 is $268,887.50 rather than $268,875.50.

performed is $200.00 per hour." This ultimately resulted in an award for attorney fees of $109,360.00 plus applicable gross receipts taxes.

On appeal, Plaintiffs do not challenge the district court's reduction in hours. However, they contend that the district court erred in reducing the hourly requested rate from $350 to $200. We are not persuaded that the district court improperly exercised its discretionary authority to reduce the hourly rate. It was not improper for the district court to rely on the affidavits submitted by the parties and its own experience to determine what it considered to be a reasonable hourly rate. *See Microsoft*, 2007-NMCA-007, ¶ 65 (explaining that "[t]he judge, familiar with the case and the normal rates in the area, may rely on his own knowledge to supplement the evidence regarding a reasonable hourly rate"). We reject Plaintiffs' argument that the district court abused its discretion solely because the $200 hourly rate it applied was the same hourly rate charged by Settlement's attorney during the litigation. We cannot conclude under the facts of this case that the district court abused its discretion in its award of attorney fees.

In its cross-appeal, Settlement contends that the district court improperly awarded attorney fees on the basis of the fees provision in the loan agreement entered into between Settlement and Plaintiffs' deceased father. Settlement argues that since Plaintiffs were not parties to the loan agreement, there was no privity of contract

7

between them and Settlement and, therefore, there was no contractual basis to support the awarding of attorney fees. The district court was not persuaded by Settlement's argument and reasoned that Plaintiffs stood in the shoes of their deceased father and that the loan agreement was the entire source of the dispute between the parties as to which party held the right to proceeds from the deceased father's annuity policies.

We reject Settlement's argument. The procedural history of this case dictates the ruling reached by the district court. We note that this case arose originally as a declaratory judgment action brought by Plaintiffs against their deceased father's second wife to establish themselves as the proper payees on the annuity policies following their father's death. *Espinosa I*, 2006-NMCA-075, ¶ 5. It was Settlement that intervened in this original lawsuit and asserted that Plaintiffs had no right to the annuity policy because Plaintiffs' father had assigned his rights under the annuity policy to Settlement. *Id.* As the district court correctly noted, the ten-year dispute between the parties in this case centered around the loan agreement and its related transactions, specifically the assignment of the annuity. Plaintiffs stood in their father's shoes and asserted his—and, ultimately, their—rights to the annuity proceeds. Thus, we affirm the district court on this issue.

## 2.  Prejudgment Interest

The district court awarded prejudgment interest at a rate of five percent.  On appeal, Plaintiffs contend that they were entitled to prejudgment interest at the higher rate of ten percent, which is the maximum amount permitted by NMSA 1978, § 56-8-4(B) (2004).

"The purpose of awarding prejudgment interest under Section 56-8-4(B) is to foster settlement and prevent delay." *Lucero v. Aladdin Beauty Colls., Inc.*, 117 N.M. 269, 272, 871 P.2d 365, 368 (1994).  Section 56-8-4(B) provides:

> [T]he court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering, among other things:
>
> (1)   if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and
>
> (2)   if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

"Whether to award prejudgment interest is a decision left to the sound discretion of the trial court, and we will reverse only for an abuse of that discretion." *Abeita v. N. Rio Arriba Elec. Coop.*, 1997-NMCA-097, ¶ 44, 124 N.M. 97, 946 P.2d 1108 (citation omitted).

Plaintiffs argue that they were entitled to prejudgment interest at the maximum rate of ten percent because Settlement wrongfully deprived them of the use of the

annuity payments throughout the course of lengthy litigation that spanned multiple years. Plaintiffs appear to argue that the rate of five percent awarded by the district court was inadequate to fully compensate them for their loss of the use of the annuity payments.

We do not agree with Plaintiffs that the district court's award constituted an abuse of discretion. The district court carefully considered and weighed both factors provided in Section 56-8-4(B). On appeal, Plaintiffs do not challenge the district court's analysis of both factors under Section 56-8-4(B), nor do they point to any other equitable considerations that would necessitate an award of prejudgment interest at the maximum rate of ten percent. *See Gonzales v. Surgidev Corp.*, 120 N.M. 133, 150, 899 P.2d 576, 593 (1995) (observing that "the trial court should take into account all relevant equitable considerations that further the goals of Section 56-8-4(B)"). Plaintiffs also offer no specific explanation as to why prejudgment interest at a rate of five percent is inadequate to compensate them for the loss of the use of their funds. Although Plaintiffs assert that they are entitled to a rate of ten percent prejudgment interest because Settlement possessed the funds for the entire length of litigation and earned greater than a five percent return by investing the diverted funds, Plaintiffs provide no record support and we therefore do not consider these unsupported factual assertions. *Bank of N.Y. v. Romero*, 2011-NMCA-110, ¶ 8, 150 N.M. 769, 266 P.3d

638 ("[W]here a party fails to cite any portion of the record to support its factual allegations, [the Court] need not consider its argument on appeal."). Since we affirm the district court's award of prejudgment interest, we need not consider Settlement's argument in its cross-appeal that the award of five percent was appropriate.

**3.      Post-Judgment Interest**

Plaintiffs were awarded post-judgment interest at a rate of eight and three-fourths percent pursuant to Section 56-8-4(A). Plaintiffs contend that they were entitled to post-judgment interest at a rate of fifteen percent due to Settlement's alleged tortious and wrongful conduct in this case. *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 55, 131 N.M. 100, 33 P.3d 651 (observing that "[w]hen a judgment is based on tortious conduct, bad faith, or a finding that the defendant acted intentionally or willfully, a court must award interest at the higher rate of [fifteen] percent").

In relevant part, the statute on post-judgment interest, Section 56-8-4(A)(2), provides:

> Interest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of eight and three-fourths percent per year, unless:
>
>      . . . .

11

> (2)   the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of fifteen percent.

We review an award of post-judgment interest for abuse of discretion. *Pub. Serv. Co. of N.M.*, 2001-NMCA-082, ¶ 60. However, we "review the court's application of Section 56-8-4(A) to the facts de novo." *Bird v. State Farm Mut. Auto. Ins. Co.*, 2007-NMCA-088, ¶ 36, 142 N.M. 346, 165 P.3d 343.

Plaintiffs argue that they were entitled to post-judgment interest at a rate of fifteen percent for two reasons. First, Plaintiffs contend that Settlement engaged in tortious conduct by wrongfully diverting and retaining funds through the illegal assignment of the annuity payments. Relying on *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, 146 N.M. 853, 215 P.3d 791, Plaintiffs argue that tortious conduct under Section 56-8-4(B) includes "conduct that risks harm, regardless of intent" and "intentional or negligent acts that invade a legally protected interest." *See Sandoval*, 2009-NMCA-095. Second, Plaintiffs contend that they were entitled to fifteen percent post-judgment interest because Settlement engaged in wrongful conduct. As support, Plaintiffs point to the following language in the opinion issued by this Court as a result of the parties' first appeal:

> The loan documents prepared by Settlement Funding indicate that Settlement Funding made efforts to circumvent the language of the anti-assignment clause. . . . This is not a situation where Settlement

12

> Funding, acting as an innocent party and ignorant of the true facts, has relied on the conduct or statements of [the plaintiff].

*Espinosa I*, 2006-NMCA-075, ¶ 28.

We are not persuaded by Plaintiffs' arguments. As an initial matter, we conclude that the district court properly determined that the judgment in this case was based on principles of contract law and did not arise out of tort law. *See Pub Serv. Co. of N.M.*, 2001-NMCA-082, ¶ 58 (stating that tortious conduct is "an act or omission that subjects an individual to liability under the principles of tort law"). Although Plaintiffs rely on *Sandoval* in support of their position that the conduct in this case was tortious, the relevant discussion in *Sandoval* focused on whether tortious conduct includes negligence. *See* 2009-NMCA-095, ¶¶ 73, 75-78. Here, Plaintiffs have not argued and the record does not support that the judgment in this case arose out of any negligence on the part of Settlement.

We also disagree that the language of our prior opinion demonstrates that Settlement engaged in tortious and wrongful conduct. The language quoted arose in the context of an analysis of whether principles of equitable estoppel prevented the voiding of the anti-assignment provision at issue. *Espinosa I*, 2006-NMCA-075, ¶ 28. Whether Settlement engaged in tortious or willful conduct, as those terms are used in the context of Section 56-8-4(A), was not directly addressed in our prior decision.

13

Thus, the district court did not abuse its discretion in determining that there was no evidence of tortious conduct.

Furthermore, the district court determined that no specific findings of intentional or willful conduct were made in *Espinosa I* or in the judgment entered by the district court following *Espinosa II.* Plaintiffs have not directed us to any evidence in the record showing that the district court's assessment of the record and factual findings was incorrect. We therefore assume that no such record authority exists. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984). In the absence of specific findings regarding culpable or willful conduct, the award of post-judgment interest at the rate of fifteen percent is to "be left to the sound discretion of the [district] court." *See Pub. Serv. Co. of N.M.*, 2001-NMCA-082, ¶ 62 (stating that "if a plaintiff wants to insure that a judgment is assessed the higher [fifteen] percent interest rate in a case not based in tort or bad faith, the plaintiff must specifically request that the fact[]finder make a finding of intention or willfulness. If such a finding is not made, and the evidence indicates that the defendant acted with a culpable mental state approximating intention or willfulness, the award of the higher interest rate will be left to the sound discretion of the trial court").

Based on the lack of specific findings, we cannot say that the district court's exercise of its discretion was improper. We therefore affirm the district court's award of post-judgment interest at a rate of eight and three-fourths percent.

**4.      Costs and Expenses**

Plaintiffs contend that the district court erred in limiting the award for costs and expenses to $2,213.65. Plaintiffs argue that the attorney fees provision of the loan agreement permitted recovery of costs and expenses beyond the limits of Rule 1-054 NMRA and, therefore, that the district court erred in reducing the award to only those amounts permitted by the rule.

We review a district court's award of costs under an abuse of discretion standard. *See H-B-S P'ship v. Aircoa Hospitality Servs., Inc.*, 2008-NMCA-013, ¶ 24, 143 N.M. 404, 176 P.3d 1136; *see also Key v. Chrysler Motors Corp.*, 2000-NMSC-010, ¶ 7, 128 N.M. 739, 998 P.2d 575 (stating that "[t]he [district] court has discretion in assessing costs, and its ruling will not be disturbed on appeal unless it was an abuse of discretion"). "A court abuses its discretion if its decision is contrary to logic and reason. Moreover, a discretionary decision that is premised on a misapprehension of the law can be characterized as an abuse of discretion." *Chapman v. Varela*, 2008-NMCA-108, ¶ 57, 144 N.M. 709, 191 P.3d 567 (alteration, internal quotation marks,

and citation omitted), *rev'd on other grounds by* 2009-NMSC-041, 146 N.M. 680, 213 P.3d 1109.

Rule 1-054(D) directs that "costs, other than attorney fees, shall be allowed to the prevailing party unless the court otherwise directs" and that costs are generally recoverable "as allowed by statute, Supreme Court rule and case law." Rule 1-054(D)(1), (2). Likewise, NMSA 1978, Section 39-3-30 (1966), provides that "[i]n all civil actions or proceedings of any kind, the party prevailing shall recover his costs against the other party unless the court orders otherwise for good cause shown." In this case, Plaintiffs did not reference Rule 1-054 or Section 39-3-30 in their written pleadings below and instead argued that they were entitled to costs and expenses on the basis of the attorney fees provision of the loan agreement, which provided:

> In the event of any dispute between the parties concerning this [a]greement or the transactions contemplated hereby, *the prevailing party shall be entitled to recover its costs and expenses*, including reasonable attorney[] fees, incurred in connection with such dispute.

(Emphasis added.) Plaintiffs' counsel submitted an affidavit and itemized cost bill seeking costs and expenses totaling approximately $19,578.66.

The district court reduced the award for costs to $2,213.65 and explained the basis for the reduction in its letter decision:

> [P]laintiffs are seeking reimbursement for numerous expenses and costs. However, this [c]ourt interprets [Judge Lang's o]rder [of Jan. 3, 2007] as awarding recoverable costs pursuant to Rule 1-054 . . . . The [c]ourt

16

reviewed each item [provided in the cost bill]; however, it was difficult at times for the [c]ourt to determine what matters are recoverable. Certain items appeared to be attorney fees and legal research fees, and most of the listed items are clearly not recoverable. It is [P]laintiffs' duty to provide this court with an appropriate cost bill.

The district court's award consisted of the costs for preparing an accounting, a jury demand fee, filing fees, and transcripts.[2] Thus, it is evident that the rationale underlying the district court's award was its determination that the costs award was limited to the recoverable costs listed in Rule 1-054(D)(2).

We conclude that the district court erred by failing to consider the loan agreement, which contractually allowed the prevailing party to recover "its costs and expenses." Although the district court is "invested with wide discretion in determining whether to award costs," the district court's discretion is "not unlimited." *Key*, 2000-NMSC-010, ¶ 7 (internal quotation marks and citation omitted). At minimum, the district court should have assessed the parties' contractual agreement with respect to costs and expenses before deciding that it would award costs in accordance with Rule 1-054. *Cf. Fort Knox Self Storage, Inc. v. W. Technologies, Inc.*, 2006-NMCA-096, ¶ 29, 140 N.M. 233, 142 P.3d 1 (stating that "[w]hile a [district] court has broad discretion when awarding attorney fees, that discretion is

---

[2]The district court also awarded Plaintiffs' their costs from a previous appeal; however, that portion of the award is not at issue here and remains unaffected by this current appeal.

limited by any applicable contract provision" and "[c]onsequently, th[e c]ourt [should] look[] to the contract language to determine the parties' intentions" when awarding fees). The district court's letter ruling does not reflect that the court considered the language of the contract.

The district court stated that it interpreted the final judgment, which was entered by a prior judge who had since retired, as restricting recoverable costs to those allowed for by Rule 1-054. However, the final judgment stated only that "[c]ollateral matters of . . . attorney[] fees, tax, and costs shall be determined at a later hearing." The final judgment did not decide any matters concerning the awarding of costs and expenses, and it was therefore contrary to logic for the district court to rely on this language in the final judgment as a basis for restricting the costs award to Rule 1-054. *See Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153 ("An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case.").

In addition, Plaintiffs correctly note that even if the district court properly limited the allowable costs under the loan agreement to those permitted by Rule 1-054, the district court failed to consider the language in the agreement that permitted the recovery of expenses in addition to costs. *See* 20 Am. Jur. 2d Costs § 1 (2012) (stating that "[c]osts are not synonymous with expenses" (internal quotation marks

18

omitted)). We conclude that the district court's failure to consider the provision's inclusion of the term "expenses" in the cost award was an abuse of discretion. *See Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶ 21, 135 N.M. 607, 92 P.3d 53 ("When a contract provides that the prevailing party in the litigation shall be awarded reasonable attorney fees and costs, a trial court may abuse its discretion if it fails to award attorney fees.").

We therefore reverse and remand with instructions that the district court reassess the award of costs and expenses in accordance with the terms of the loan agreement. If the district court elects to award costs and expenses in a manner outside the contractual agreement, the district court should articulate its basis for doing so in the final order. *See, e.g.*, *Robison v. Katz*, 94 N.M. 314, 322, 610 P.2d 201, 209 (Ct. App. 1980) (indicating that a "court may hold void a provision for attorney[] fees in a note or contract where the fees are excessive or oppressive").

**5.     Retroactive Application of *Espinosa I***

In its cross-appeal, Settlement argues that this Court's decision in *Espinosa I* should not be applied retroactively. Settlement's argument is difficult to follow, but as we understand it, Settlement contends that the district court erred by applying *Espinosa I* retroactively and ordering Settlement to pay restitution for all sums it

collected from the annuity policy, even those sums collected prior to the death of Plaintiffs' father.

Settlement's argument is without merit. Under the doctrine of law of the case, "a decision by an appeals court on an issue of law made in one stage of a lawsuit becomes binding on subsequent trial courts as well as subsequent appeals courts during the course of that litigation." *State ex rel. King v. UU Bar Ranch Ltd. P'ship*, 2009-NMSC-010, ¶ 21, 145 N.M. 769, 205 P.3d 816.

**CONCLUSION**

We affirm the district court's award as to attorney fees and pre- and post-judgment interest. On the issue of costs and expenses, we reverse and remand for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**J. MILES HANISEE, Judge**